Leodis C. Matthews, Esq. SBN 109064
Email: LeodisMatthews@ZhongLun.com
**ZHONG LUN LAW FIRM LLP**
4322 Wilshire Boulevard, Suite 200
Los Angeles, California 90010-3792
Tel. 323.930.5690
Fax.323.930.5693
*Attorneys for Plaintiff Memblaze Limited*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEMBLAZE LIMITED,<br><br>   Plaintiff,<br><br>   v.<br><br>NETLIST, INC.<br><br>   Defendant. | Case No.: 8:23-cv-00790<br><br>**COMPLAINT FOR DAMAGES FOR: (1) BREACH OF CONTRACT; (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (3) COMMON COUNT FOR GOODS DELIVERED; AND (4) PROMISSORY ESTOPPEL** |

1. Plaintiff Memblaze Limited ("Memblaze"), by and through their attorneys Zhong Lun Law Firm LLP, hereby states claims against Defendant Netlist, Inc. ("Netlist") and alleges:

### INTRODUCTION

2. Netlist entered into a contract with Memblaze to purchase 8,000 Solid State Drives ("SSDs"), at the unit price of $2,100 and the total price of $16,800,000.

3. Under the parties' contract, Memblaze manufactured and shipped to Netlist's affiliate 3,526 SSDs, for a total price of $7,404,600.   Additionally, in reliance on the contract and Netlist's promises with respect thereto, Memblaze incurred costs in an amount exceeding $908,893 to manufacture the remaining 4,474 SSDs that Netlist had agreed to purchase under the Purchase Order.

COMPLAINT                                                                                                   1

4. Two days after Memblaze completed a third shipment of SSDs under the parties' contract, Netlist sought to "cancel" its order of SSDs.

5. However, at the time Netlist placed its purchase order for the SSDs, Netlist agreed that the order was "Non-Cancelable, Non-Returnable" or "NCNR." Accordingly, Netlist did not have the right to "cancel" its order of SSDs.

6. In breach of the parties' contract, Netlist has not paid a single dollar to Memblaze for the SSDs ordered under that contract.

7. In this action, Memblaze seeks to be made whole under the parties' contract, including an award of damages of (a) $7,404,600 for the SSDs ordered by Netlist and which Memblaze shipped to Netlist's affiliate at Netlist's direction; and (b) an amount not less than $908,893 for costs Memblaze incurred to manufacture the remaining SSDs Netlist ordered under the parties' contract.

## PARTIES

8. Plaintiff Memblaze is a company organized under the laws of Hong Kong, with its principal place of business in Hong Kong.

9. Defendant Netlist is a Delaware corporation, with its corporate headquarters at 111 Academy Way, Suite 100, Irvine, California 92617.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because this action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Pursuant to 28 U.S.C. § 1391, the venue is proper within this judicial district because Netlist resides in this district and, on information and belief, a substantial part of the events giving rise to Memblaze's claims occurred in this district.

# FACTUAL BACKGROUND

**The Contract**

12. By April 2022, the parties began discussing a transaction under which Netlist would purchase 8,000 SSDs from Memblaze.

13. Those discussions concluded on May 19, 2022. On that date, Netlist's Senior Operations Manager, Alex Chen, sent Memblaze an email attaching Purchase Order Number 0330236, and containing the following message: "Attached is PO for 8Kpcs 16T U.2. As confirmed before, this is NCNR order. Regarding deliver date, could you help to review and advise." (Mr. Chen's email and the attached Purchase Order Number 0330236 are collectively referred to herein as the "Purchase Order.")

14. The Purchase Order states that it will be "governed" by the law of the State of California.

15. Under the Purchase Order, Netlist purchased 8,000 SSDs, Model NS1962UF115T-5M1A000, for $2,100 each, for a total price of $16,800,000.

16. In May-July 2022, Memblaze specially designed, manufactured, and shipped to Netlist's affiliate, at Netlist's direction, a total of 3,526 SSDs under the Purchase Order: (a) on or around June 20, 2022, Netlist's affiliate received 1,451 units for a price of $3,047,100; (b) on or around June 25, 2022, Netlist's affiliate received 62 units for a price of $130,200; and (c) on or around July 10, 2022, Netlist's affiliate received 2,013 units for a price of $4,227,300.

17. For the remaining 4,474 units to be manufactured under the Purchase Order, Memblaze incurred costs of an amount exceeding $908,893.

**The Dispute**

18. On July 12, 2022, two days after Netlist's affiliate received Memblaze's third shipment of SSDs under the Purchase Order, Netlist sent Memblaze an email purporting to "cancel" the Purchase Order. Attempting to

explain its purported cancellation, Netlist referred to a cancellation by one of its customers and an ongoing dispute it had with a competitor.

19. On July 28, 2022, Netlist emailed Memblaze a "Change Order," purporting to reduce the quantity in the earlier Purchase Order from 8,000 to 100 SSDs. As the basis for this Change Order, Netlist stated the following: "Please find attached to this email, change order 330236A (which formally reduces the quantities on PO 330236 from 8,000 to 100 SSDs). This is in response to your email which indicates that you cannot accept any price change. As we noted on the call, we are dealing with one of the 10 largest DRAM/SSD customers in the world, and they are mandating a price of $1800. We need you to bring your price down to $1700 or we are unable to do this deal. We hope that you will find some way to get this done. However, in the meantime, we must ask for an RMA number to ship back 3,426 units of the 3,526 units that were shipped."

20. The Purchase Order was not contingent on, or subject to, Netlist's ability to resell the goods at a specific price, any commitments (or lack thereof) from Netlist's customers, or Netlist's dispute with a competitor.

21. As stated above, the Purchase Order was "Non-Cancelable, Non-Returnable" or "NCNR," meaning that Netlist was not permitted to cancel the Purchase Order or return unsold goods that it purchased. No less than three Netlist employees expressly confirmed the NCNR term, including Netlist's Executive Vice President of Sales and Operations, Paik Ki Hong; Netlist's Senior Operations Manager, Alex Chen; and Netlist's Vice President of Marketing, Tihn Ngo.

22. Yet, Netlist has failed to make any payment under the Purchase Order and incorrectly asserts that it had a right to cancel the Purchase Order.

23. As a result of Netlist's breach of the parties' contract, Memblaze has suffered damages of not less than $8.3 million.

# FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT

24. Memblaze incorporates by reference paragraphs 1 through 23 of the Complaint as though fully set forth herein.

25. Memblaze and Netlist entered into a contract, whereby Netlist purchased 8,000 SSDs for a price of $16,800,000 (*i.e.*, the Purchase Order).

26. On July 12, 2022, Netlist sought to "cancel" the Purchase Order.

27. Under the terms of the Purchase Order, Netlist was not entitled to "cancel" its purchase of the SSDs.

28. By the time Netlist sought to "cancel" the Purchase Order, Memblaze had specially manufactured and shipped 3,526 SSDs to Netlist's affiliate, for which Netlist was required to pay $7,404,600 to Memblaze. In addition, Memblaze incurred costs of an amount exceeding $908,893 to manufacture the remaining 4,474 SSDs that Netlist agreed to purchase under the Purchase Order.

29. At the time Netlist sought to "cancel" the Purchase Order, Memblaze had substantially performed all of its obligations under the Purchase Order.

30. Netlist has refused to pay for the 3,526 SSDs that Memblaze shipped and which Netlist's affiliate received and accepted. Under the Purchase Order, Netlist was required to pay $7,404,600 to Memblaze for those delivered SSDs.

31. Netlist further asserts and claims it is not required to accept the remaining 4,474 SSDs ordered under the Purchase Order. Memblaze is entitled to the costs and other damages incurred to manufacture those SSDs, as well as any losses resulting from Netlist's refusal to accept them as agreed.

32. As a result of the above mentioned facts, Memblaze has suffered damages in an amount not less than $8.3 million.

33. Netlist's breach of contract was a substantial factor in causing those damages to Memblaze.

# SECOND CAUSE OF ACTION:
# BREACH OF IMPLIED COVENANT OF
# GOOD FAITH AND FAIR DEALING

34. Memblaze incorporates by reference paragraphs 1 through 23 of the Complaint as though fully set forth herein.

35. Memblaze and Netlist entered into a contract, whereby Netlist purchased 8,000 SSDs for a price of $16,800,000 (*i.e.*, the Purchase Order).

36. Thereafter, Netlist sought to "cancel" the Purchase Order, but not before Memblaze had substantially performed all of its obligations under the Purchase Order.

37. At the time of Netlist's purported cancellation of the Purchase Order, Memblaze had shipped 3,526 SSDs which were delivered and received by Netlist's affiliate as the Purchase Order directed.   Under the terms of the Purchase Order, Netlist was required to pay $7,404,600 to Memblaze for those SSDs.

38. In addition, Memblaze has incurred costs of an amount exceeding $908,893 to manufacture the remaining 4,474 SSDs that Netlist also had ordered under the Purchase Order.

39. Netlist claims it had a right to cancel the Purchase Order under the terms of that Purchase Order.   However, under the terms of the Purchase Order, Netlist was not entitled to "cancel" its purchase of the SSDs.

40. Netlist did not act fairly and in good faith, and violated its covenant to do so, by purporting to "cancel" the Purchase Order after: (a) repeatedly assuring Memblaze the Purchase Order was "NCNR" (Non-Cancelable, Non-Returnable); (b) receiving 3,526 SSDs that Memblaze specially manufactured for Netlist; and (c) causing Memblaze to incur costs to manufacture the remaining 4,474 SSDs ordered under the Purchase Order.

41. As a result of Netlist's purported cancellation, which itself is a

violation of its covenant of good faith and fair dealing, Memblaze has suffered damages in an amount not less than $8.3 million.

## THIRD CAUSE OF ACTION:
## COMMON COUNT FOR GOODS DELIVERED

42.　Memblaze incorporates by reference paragraphs 1 through 23 of the Complaint as though fully set forth herein.

43.　Netlist expressly requested, by words, deeds, and/or conduct, that Memblaze manufacture and deliver goods (*i.e.*, 3,526 SSDs) for Netlist's benefit.

44.　Memblaze delivered those goods as requested and provided invoices to Netlist for their payment.

45.　Netlist has not paid Memblaze for those goods.

46.　The reasonable value of the goods Memblaze delivered for Netlist's benefit is $7,404,600.

## FOURTH CAUSE OF ACTION:
## PROMISSORY ESTOPPEL

47.　Memblaze incorporates by reference paragraphs 1 through 23 of the Complaint as though fully set forth herein.

48.　Memblaze alleges in the alternative to its breach of contract claim that Memblaze is entitled to recover under the doctrine of promissory estoppel if it is determined that a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Memblaze and Netlist, or the existing contract is void, invalid, or unenforceable.

49.　Netlist made an unambiguous promise to pay Memblaze $16,800,000 for 8,000 SSDs.

50.　It was foreseeable that Netlist's promise would cause or induce Memblaze to act in reasonable reliance on Netlist's promise.   Indeed, as discussed above, Netlist agreed that it could not cancel the Purchase Order.   The Purchase

Order was "Non-Cancelable, Non-Returnable" or "NCNR."  Additionally, Memblaze and Netlist had several communications with each other about the progress of the manufacturing and the delivery of the finished goods.

51. Memblaze acted in accordance with and relied upon Netlist's promises to complete the purchase transaction, and to receive and pay for delivery of the goods.

52. In reliance on Netlist's promise, Memblaze specially manufactured and shipped 3,526 SSDs to Netlist's affiliate, for which Netlist was required to pay $7,404,600 to Memblaze.  Netlist has refused to pay any of this amount.

53. In addition, in reliance on Netlist's promise, Memblaze incurred costs of an amount exceeding $908,893 to manufacture the remaining 4,474 SSDs that Netlist had promised to purchase under the Purchase Order.  Netlist has refused to reimburse Memblaze for these costs.

54. By relying on Netlist's promise, Memblaze has suffered damages in an amount not less than $8.3 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Memblaze requests entry of a judgment in its favor and for the following, cumulatively, and alternatively:

a. For actual damages and exemplary monetary damages in an amount to be proven but not less than $8.3 million;

b. Reasonable attorneys' fees and costs of suit and disbursements as allowed by law;

c. Pre-suit interest and prejudgment interest as allowed by law; and

d. For such other or further relief which this Court deems just and proper.

| | |
|---|---|
| Dated: May 5, 2023 | Respectfully submitted,<br>ZHONG LUN LAW FIRM<br>Leodis C. Matthews, Esq.<br><br>By: */s/ Leodis C. Matthews*<br>     For the Firm<br>     Attorneys for Memblaze Limited |